MARTHA J. SHOEMAKER, APPELLANT, V. COMMERCIAL UNION
ASSURANCE COMPANY, APPELLEE.

FILED FEBRUARY 6, 1908.   No. 15,319.

1. **Insurance Contract: EVIDENCE.** In an action upon an alleged insurance contract, plaintiff introduced evidence that defendant's agents sent to plaintiff a claim for the payment of the premium for the alleged insurance, as follows: "Martha J. Shoemaker, To Crutcher & Welsh (defendant's agents) Dr. To insurance premium advanced on policy No. —— of Commercial Union Assurance Company, held as collateral to loan No. 038701, * * * $14.40. If this amount is promptly remitted, the policy will be filed with the receivers of the Lombard Investment Company for the benefit of the present owner of the mortgage. If not paid, the receivers will call on the mortgage holder for payment, and this amount will be held by him as a lien against the property." *Held*, Insufficient to establish the consummation of an insurance contract.

2. ——: ——. Plaintiff, a mortgagor, agreed to maintain insurance upon the mortgaged dwelling-house for the benefit of the mortgagee. Upon the expiration of an insurance policy the receivers of the mortgage demanded the payment of a premium for the reinsurance of the property, and agents of the defendant company made the demand set forth in the preceding paragraph, and plaintiff introduced evidence that she had paid the premium to an agent of the receivers, but who is not shown to be the agent of the defendant company, and it is not shown that the premium paid ever reached the defendant or its agents, or that the plaintiff was directed to pay the same to the receiver's agent. *Held*, Insufficient of itself to prove a contract for insurance.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Walter J. Lamb* and *George A. Adams*, for appellant.

*Field, Ricketts & Ricketts* and *Sylvester G. Williams*, contra.

EPPERSON, C.

On a former appeal a judgment in favor of the plaintiff was reversed and the case remanded for further proceed-

ings. 75 Neb. 587. When the case reached the district court the plaintiff filed an amended petition, alleging that on or about January, 1895, the defendant, in consideration of the sum of a premium of $14.40, agreed with the plaintiff and with her agents to insure, and did insure, her dwelling-house in the city of Lincoln against loss or damage by fire to the amount of $1,200 from November 30, 1894, to November 30, 1897, and agreed to issue to plaintiff its policy for such insurance, but never delivered the same to plaintiff and still refuses to do so. The amended petition further alleges that at the time of making the agreement to insure the property there was an outstanding mortgage thereon, given by the plaintiff to the Lombard Investment Company, for $1,100; that for further security the mortgagee held an insurance policy in the Orient Insurance Company to the amount of $1,200, expiring November 30, 1894, which had been taken out by the plaintiff, and that the mortgage contained an express stipulation between the parties making the Lombard Investment Company her attorney in fact to reinsure upon the expiration of the existing policy, and authorizing the Lombard company, upon insuring or renewing the insurance, to add the amount of the premium to the amount of the mortgage loan so held by it. It is further stated that the agreement between the plaintiff and the defendant to insure plaintiff's dwelling-house was made in connection with an agreement for the extension of the maturing unpaid loan thereon for $1,100. It is further alleged that prior to the making of the agreement to insure, entered into between the plaintiff and defendant, the defendant company entered into an agreement with the Lombard Investment Company to the effect that it would insure, and that it should have the right to insure, all the property upon which the Lombard company accepted or negotiated loans in Missouri or Nebraska and other western states; that the Lombard company consented to collect, or assist in collecting, the premiums for such insurance, and where not collected to pay the same and add the amount of the premium to such

loans, respectively; that in order to carry out this agreement between the defendant company and the Lombard company the defendant company commissioned one E. R. Crutcher, of Kansas City, Missouri, its agent; that Crutcher, at the same time, was general agent of the Lombard company, having sole supervision and control over all insurance business of the Lombard company, and that notice was given by defendant and the Lombard company that it would not accept or renew any loans, except upon the express condition that insurance upon the property upon which a loan was made should be effected in the defendant company; that shortly prior to the making of the agreement of insurance the Lombard company failed and went into the hands of receivers, and that the receivers appointed for that company, by agreement with the defendant company, continued the agreement existing between it and the Lombard Investment Company previous to its failure; that in order to consummate and carry out such agreement the defendant company thereafter acted in conjunction with the Concordia Loan & Trust Company, which was a defunct corporation owned by the Lombard company, and which was revived in name alone to carry on the business of the renewal or extension of loans held or taken by the Lombard company in connection with insurance in the defendant company and renewals of insurance, and that it was expressly agreed that no renewals of loans made by the Lombard company should be accepted, except when accompanied by an agreement that the applicant for such renewal should take out or renew its insurance 'in the defendant company through its agents, Crutcher & Welsh, at Kansas City, and that all notices in any way relating to the insurance connected with such loans or renewals were to be printed and prepared by the defendant company, and by its agents forwarded through the Concordia Loan & Trust Company. It is alleged that about October, 1894, plaintiff applied to one H. B. Sawyer, whom she alleges was then agent for the Lombard company and

for the Concordia Loan & Trust Company, and also for
the defendant insurance company, for an extension of
her loan of $1,100; that an agreement of extension of her
loan was negotiated, and that she signed an application
therefor; that at that time the Lombard Investment Com-
pany and the Concordia Loan & Trust Company, through
the said H. B. Sawyer, required of the plaintiff that she
take out an insurance policy in the defendant company
for $1,200 for three years at a premium of $14.40, to date
from November 30, 1894, to which she agreed; that this
renewal application was sent to the defendant's office in
Kansas City, which was also occupied by the Lombard
Investment Company and its receivers and the Concordia
Loan & Trust Company; that the same was accepted and
its terms approved, and the defendant assumed, agreed
and undertook to renew the said policy for $1,200 for
three years from November 30, 1894, of which it gave
the plaintiff and its agents due notice; and that after-
wards, on or about the 30th of November, 1894, defendant
agreed to insure, and did insure, plaintiff's property in
the sum of $1,200, of which it gave plaintiff and her agent
due notice. Other matters are alleged showing a waiver
of the prompt payment of the premium, which was paid
to H. B. Sawyer in January, 1895, and a bill for the
same, it is alleged, was sent by the defendant to said
Shoemaker for collection. The house was destroyed by
fire April 24, 1895, and recovery is sought upon the agree-
ment to insure. Upon the conclusion of the plaintiff's
evidence, the trial court directed a verdict for defendant.

Much stress is placed by the plaintiff upon what is
termed the "insurance clause" in the mortgage given to
the Lombard company. That clause provided that plain-
tiff should insure the property for its insurable value,
payable to the mortgagee, in some company approved by
the Lombard company or assigns. In the event of the
failure to do so, or to reinsure and assign the policy to
the Lombard company before noon of the day on which
the insurance expired, then the Lombard company was

authorized and empowered, as attorney in fact for the party of the first part, to insure or reinsure said building in such company as it might select. It was further provided that, in case the Lombard company insured or reinsured the property upon which its loan was made, interest should be allowed upon the premium paid by the Lombard company at the rate of 10 per cent. per annum, and the mortgage stand as security for the repayment thereof, and that the mortgage might be foreclosed if the money so advanced was not repaid within 30 days. Prior to going into the hands of receivers the Lombard company maintained an insurance department, of which one E. R. Crutcher was the head. After the receivers took possession of the assets of the Lombard company a circular letter, signed by the receivers, was issued and sent to the parties having loans from the company; Mrs. Shoemaker, among others, receiving a copy. This letter was dated October 1, 1894, and called attention to the early expiration of the old policy. It expressed dissatisfaction, experienced by the receivers in having mortgagors place insurance with various companies, and stated that the Lombard company had the insurance in which it was interested placed with the Commercial Union Assurance Company, and perfected arrangements with Crutcher to renew all policies, including that referred to above. It further stated: "The receivers cannot carry this insurance or make any advances for premiums, yet they deem it advisable to give gratuitously this notice of expiring insurance that all interests may be protected. To this end  *  *  *  we have arranged with him (Crutcher) to look after insurance whenever requested by any one interested in loans made by the Lombard Investment Company." This letter-head bears the names of the receivers of the Lombard company, and also of Crutcher & Welsh, insurance agents. The testimony discloses that after the receivership Crutcher formed a partnership with Welsh, for the purpose of carrying on the insurance busi-

44

ness. While at the head of the insurance department of the Lombard company he was commissioned as agent of the Commercial Union Assurance Company, defendant herein, and he retained said·commission and acted as agent for the defendant company after associating himself with Mr. Welsh.

The Concordia Loan & Trust Company, as explained by one of plaintiff's witnesses, was originally a subcompany of the Lombard Investment Company, and was organized especially for the purpose of buying in taxes on defaulted loans and holding tax certificates. At the failure of the Lombard company it was discovered that the Concordia Loan & Trust Company was solvent, and it was used as a means of holding the business together, and the holders. of those loans of the Lombard company which had been sold in the east were solicited to place their loans in the hands of the Concordia Loan & Trust Company for ad-justment and settlement. Many of them did so. The witness further explained that a number of the parties holding loans purchased from the Lombard company pre-ferred to use the receivers of that company in the adjust-ment of their claims, and the receivers for two or three years attended to their business. The loan of one party would be looked after by the Concordia Loan & Trust Company, and of another party by the receivers of the Lombard company; but both the receivers and the Con-. cordia company had the same clerks and occupied the same offices. The guaranty of the Lombard company was indorsed on all of the loans which it had sold, and the receivers felt it their duty to do whatever they could for the investors to realize their money with a view to reduc-ing the liability on the guaranty. This, it is explained, was the reason for the receivers handling a great many of these loans; but, where the investors were willing, then the receivers placed them in the hands of the Concordia Loan & Trust Company. It is undoubtedly true that the receivers and Crutcher & Welsh were anxious that any reinsurance effected on property on which loans were held

should be taken out in the defendant company. The reason for this is plain, and is explained in the letter of the receivers. Crutcher was undoubtedly anxious to write insurance in the company for which he was agent, on account of the commissions that would accrue therefrom, and, having been at the head of the insurance department of the Lombard company while it was a going concern, he had a better knowledge of the condition of the insurance existing upon property upon which loans had been effected than any other party, and the receivers allowed him access to the books of the company, and undoubtedly afforded him every opportunity in their power to secure reinsurance where policies had expired.

Under date of January 5, 1895, Crutcher & Welsh sent to Mrs. Shoemaker the following: "Kansas City, Mo., Jan. 5, 1895. Martha J. Shoemaker, 2209 So. 13th St., Lincoln. To Crutcher & Welsh, Dr. 11-30-'94. To insurance premium advanced on policy No. .... of Commercial Union Assurance Company, held as collateral to loan No. 038701. Sum insured is $1,200. Rate $1.20. Term 3 yrs. $14.40. If this amount is promptly remitted, the policy will be filed with the receivers of the Lombard Investment Company for the benefit of the present owner of the mortgage. If not paid, the receivers will call on the mortgage holder for payment, and the amount will be held by him as a lien against the property."

The mortgage referred to in this communication was one which the plaintiff had given on the property in question to the Lombard Investment Company, and by it transferred to Mrs. Longacre. As said by Judge ALBERT in his opinion on a former appeal of this case: "The letter is ineffective either to prove the fact of payment of the premium or an offer on the part of the defendant to insure the property. If the letter be treated as that of the company, at most it shows a waiver of payment of the premium as a condition precedent to the contract of insurance becoming effective." 75 Neb. 587. Plaintiff claims that she paid the premium to H. B. Sawyer, de-

fendant's agent, at Lincoln. In this connection it might be stated that the terms upon which a renewal of Mrs. Shoemaker's loan was agreed upon were that $100 upon her loan should be paid in cash and the remainder of $1,000 should be extended for a period of three years. Mrs. Longacre, the holder of her loan, had placed the mortgage in the hands of the Concordia Loan & Trust Company. She had made one payment of $50 of the $100 agreed upon, and subsequently, at another time, paid $25 to H. B. Sawyer, who was without doubt acting as agent for the Concordia company. Of this latter sum it is now claimed $14.40 was to be applied in payment of the premium upon renewal of the insurance; but we have searched the record in vain for any evidence which goes to show that the Concordia Loan & Trust Company was either the agent of the defendant company, or that it had effected insurance upon the plaintiff's property through that company or had made any arrangement or agreement for such insurance. Neither can we discover that H. B. Sawyer, to whom the money was paid by the plaintiff, had any connection whatever with the defendant company, or was in anywise authorized to act for it or in its behalf, nor does it appear that he or the Concordia company ever paid the premium to the defendant or to Crutcher. Again, it might be stated that, while the terms for the extension of Mrs. Shoemaker's loan had been agreed upon, the evidence is clear that she on her part never complied with the conditions of such extension by paying to the holder of her mortgage all of the $100 in cash which was made a condition of such extension. The receivers, as in duty bound, in order to protect the estate in their hands, offered Crutcher & Welsh and the Concordia Loan & Trust Company every opportunity at their command to effect reinsurance upon loans which had been sold to outside parties, in order to save liability on the guaranty which the Lombard company was under for the payment of such loans in case of loss by fire of the mortgaged property. This being the case, it is not at all strange that they

offered the services of their clerks to the Concordia company in its efforts to collect loans which had matured and to effect reinsurance where policies had expired. This probably explains a letter written by a clerk in the office of the receivers of the Lombard company upon a letterhead of the Concordia Loan & Trust Company calling for the deferred cash payment of $25 agreed upon for an extension of the loan, and $14.40 as premium upon reinsurance of the property, and also a letter of one Adams, purporting to be acting for the Concordia Loan & Trust Company, calling for payment of the premium for reinsurance of plaintiff's property. Mr. Crutcher, the agent of the defendant company, is explicit in his testimony that no policy of reinsurance upon the property of Mrs. Shoemaker was ever issued by the defendant company, that no agreement to reinsure was ever made, and that no application for such reinsurance was ever made by any one for or on behalf of Mrs. Shoemaker or any one interested in the property.

The evidence does not show that the Lombard company, or its receivers, or the Concordia company were the agents of the defendant company, nor does it appear that Crutcher, or Crutcher & Welsh, or defendant had ever agreed with any person to issue a policy of insurance upon the plaintiff's property. Defendant, acting through its agents, Crutcher & Welsh, was ready to insure plaintiff's property whenever authorized so to do by any one having an insurable interest therein; but the opportunity it gave was neglected. At most, the extent of the authority given to Crutcher & Welsh by the Lombard company, or by its receivers, or by the Concordia company, was to look after the insurance and to attempt to procure insurance business from the mortgagor. Upon their failure to do so, the receivers or the assignee of the mortgage could have procured the insurance; but until they did so the insurance company could not be liable. Relative to the bill rendered for the premium, an inference may be deduced that the insurance had been written, but it cannot be said that this

communication proved a contract of insurance. It rather indicated that the defendant's agents withheld the delivery thereof until some interested party should complete the transaction and make it a binding contract of insurance by paying the premiums and thereby procure a delivery of the policy. After their appointment the receivers arranged with Crutcher & Welsh to carry for a short time risks on mortgaged property which was owned by the Lombard company, and which had not been sold or disposed of when the receivers were appointed. Such insurance was not represented by any insurance policy, but by a special contract, the terms of which are not made clear by the evidence. But it is clear that this special arrangement did not include property, the mortgage on which had been sold by the mortgagee. The insurance on such property was not carried by Crutcher & Welsh; but they solicited such business and wrote the same when requested by interested parties. In view of the evidence that defendant company never insured the plaintiff's property, and never made a contract that it would insure the same, we must take it that the bill rendered for the premiums was intended as a forceful reminder that the old policy had expired. In other words, the inference it raises is insufficient to overcome the probative effect of the other facts adduced. Neither do the letters written to plaintiff by the Concordia company demanding payment of the premium prove any liability of the defendant. In our view of the evidence, it is wholly lacking to establish the allegations of the petition that defendant ever agreed to insure her property, or that such insurance was ever applied for.

In this state of the case, the district court did not err in directing a verdict for the defendant, and we recommend an affirmance of its judgment.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.